UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALEXANDER T GEESY, Plaintiff, | ) | |
| v. | ) | Case No. 1:24-cv-02040-TWP-TAB |
| TONY SKINNER, DAWN JOHNSON, Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Tony Skinner ("Sheriff Skinner") and Dawn Johnson's ("Ms. Johnson") (together the "Defendants") Motion for Summary Judgment (Dkt. 18). Plaintiff Alexander Geesy ("Mr. Geesy") brings this lawsuit against the Defendants alleging that when he was incarcerated at the Delaware County Jail ("the Jail"), he was denied adequate food and denied meals that complied with his religion. Mr. Geesy has not responded to the motion. For the reasons below, that summary judgment is **granted**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still [has] to show that summary judgment [is] proper given the undisputed facts,'" *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011), with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II. <u>FACTUAL BACKGROUND</u>

Mr. Geesy failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Geesy and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

**A. Food Service at the Jail**

Approximately every two years, if not more often, the Delaware County Sheriff's Office has its menus reviewed by a registered dietitian to confirm that the Jail's kitchen is meeting the inmates' caloric and nutritional needs. (Dkt. 19-1 ¶ 6-7). The most recent menu review before Mr. Geesy filed this lawsuit on October 14, 2024, was conducted in June of 2024. *Id.* ¶ 8. It confirmed that the menus provided sufficient nutritional content and calories to meet the needs of the majority of inmates in the Jail. *Id.* ¶ 9; (Dkt. 19-5).

**B. Mr. Geesy's Time at the Jail**

Mr. Geesy was booked into the Jail as a pretrial detainee on July 29, 2022. (Dkt. 19-7 at 3). During intake, he was asked basic information about himself, including his height, weight, and religion. *Id*. Mr. Geesy was sentenced on July 26, 2024, and remained at the Jail until November 4, when he was transferred to the Indiana Department of Correction. *Id.* at 4.

**1. Weight Loss**

Upon booking, Mr. Geesy reported that his height was 5' 9", his weight was measured at 189 pounds, and his body-mass index ("BMI") was calculated to be 27.9, which put him in the category of "overweight." (Dkt. 19-2); (Dkt. 19-3 at 1). Mr. Geesy reported that his religion was Christian. (Dkt. 19-7 at 5). As a mainstream Christian, Mr. Geesy did not have any special religious dietary needs, and he was served regular (non-kosher) meals trays. *Id.*

Not long after Mr. Geesy was booked into the Jail, he noticed that he was losing weight. *Id.* at 8. By April 2024, Mr. Geesy came to think he had lost so much weight that he should be served two meal trays at breakfast, two meal trays at lunch, and two meal trays at dinner. *Id.* at 9). He believed that to get double meal trays, a nurse had to approve it. *Id.* On April 11, 2024, he submitted a medical request asking for his weight to be checked. *Id.* at 8; (Dkt. 19-4). Nurse

Connie Treon checked Mr. Geesy's weight that day. (Dkt. 19-3). It was 141.7 pounds, making his BMI 20.9. *Id.* Observing that he had lost 48 pounds since he had been booked into the Jail more than two years prior, Mr. Geesy asked Nurse Treon to approve him to receive double meal trays, but she did not do so. (Dkt. 19-7 at 8). Instead, she told him that his BMI was healthy. *Id*. at 9

Mr. Geesy does not recall talking to Ms. Johnson about his weight loss or his request to receive double food trays. *See id.* at 9. Nevertheless, he attributes his weight loss to her because he believes that she did not put enough food on the inmates' regular (non-kosher) meal trays. *Id*. He also contends that Sheriff Skinner failed to supervise Ms. Johnson and just let her do whatever she wanted to do. *Id*. at 5.

**2. Religious Diet Request**

Although Mr. Geesy had been a lifelong Christian, after he entered the jail he "started reading into Islam and hearing the Quran." *Id.* at 5-6. He became a practicing Muslim, and in February 2023, he participated in Ramadan. *Id.* at 14. When Mr. Geesy was Muslim, he asked not to be served pork, but he did not ask for and did not receive kosher meals. *Id*. At some point, he turned away from the Islamic faith because he considered the prayer rituals to be too time consuming and burdensome. *Id*. at 7.

By August of 2024, Mr. Geesy had become a Hebrew Israelite. (*See* Dkt. 19-8 at 4). On August 9, 2024, he requested a kosher diet because, according to him, Hebrew Israelites do not believe in eating shellfish, animals that chew their own cud, or birds of prey. *Id*. Mr. Geesy believed that a kosher diet would meet the religious diet requirements of his new faith. *Id*. August 9, 2024, was the first time that Mr. Geesy requested kosher meals since he had been in the Jail. (Dkt. 19-7 at 15). In accordance with his request, he began receiving kosher meals. *Id*. at 16. Nine days later, however, on August 18, 2024, Mr. Geesy asked to stop receiving kosher meals because

he discovered that he had been restricted from purchasing non-kosher items on commissary. (Dkt. 19-8 at 6-7; Dkt. 19-7 at 16). He asked that his "commissary kosher restrictions" be "unlocked" because he was "no longer kosher." (Dkt. 19-7 at 16). Mr. Geesy's kosher meals were stopped on or about August 20. *Id.* at 19.

Mr. Geesy requested to resume receiving kosher meals again on September 27, 2024, because he was transitioning to be a Seventh Day Adventist. (Dkt. 19-8 at 8). He did not receive any response to his requests. (Dkt. 19-7 at 20). According to Mr. Geesy, Seventh Day Adventists require kosher meals because they believe their food should be "clean and sanitary" and it must therefore be prepared in a clean kitchen separately from everyone else's food. (Dkt. 19-7 at 19-20). During his deposition, however, Mr. Geesy could not explain whether Seventh Day Adventists have a need for clean and sanitary food prepared in a clean kitchen that is different from any other person's need for clean and sanitary food prepared in a clean kitchen. *Id*. at 12. He could not say what Seventh Day Adventists believed because he had been a Seventh Day Adventist for only a couple of weeks and it had been a long time since he had been a Seventh Day Adventist. *Id*. at 10. Mr. Geesy testified that he had asked for kosher meals on September 27, 2024, because they came in sealed pouches and he could therefore be assured that no one had tampered with his food. *Id*. at 23.

When he arrived at the Indiana Department of Corrections ("IDOC") in November of 2024, Mr. Geesy considered himself to be a Muslim. *Id*. at 7. He did not, however, ask the IDOC for kosher meals because he thought it was too much of a hassle to "mess" with the special "diet line." *Id*. Not long after arriving at the IDOC, Mr. Geesy became Christian again. *Id*. At his August 2025 deposition, Mr. Geesy reported that he is now receiving regular (non-kosher) meal trays in the DOC. *Id*.

## III. DISCUSSION

The defendants seek summary judgment on Mr. Geesy's conditions-of-confinement and religion claims.

**A. Conditions-of-Confinement**

Mr. Geesy was a pre-trial detainee for all but the last four months at the Jail. Conditions-of-confinement claims for pretrial detainees, which flow from the Due Process Clause of the Fourteenth Amendment, are analyzed under an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 821−22 (7th Cir. 2019). Under this standard, the plaintiff must show "that the conditions in [the jail] posed an objectively serious threat to his health; that the [defendant's] response was objectively unreasonable under the circumstances; and that [the defendant] acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Hardeman*, 933 F.3d at 823, 827 and *Miranda v. County of Lake*, 900 F.3d 335, 353−54 (7th Cir. 2018)).

It is undisputed that Jail officials submitted the Jail's menus to be reviewed by a registered dietitian every two years and received confirmation that the menus met the nutritional and caloric needs of the majority of the inmates in the Jail. Further, there is no evidence that neither Defendant was aware that Mr. Geesy was having any problems with the nutritional sufficiency of the meals provided. Having failed to respond to the motion for summary judgment, Mr. Geesy has failed to designate evidence that either Sheriff Skinner or Ms. Johnson were aware that Mr. Geesy was not receiving adequate meals. Mr. Geesy therefore has failed to show that his constitutional rights were violated by these Defendants.

The doctrine of qualified immunity shields government officials from individual liability so long as their conduct “does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) and they are entitled to qualified immunity on this claim. Because the Defendants are entitled to summary judgment on the merits of this claim, the Court need not reach their qualified immunity argument.[1]

**B. Religion Claims**

The Religious Land Use and Institutionalized Persons Act "RLUIPA" protects religious groups and incarcerated or confined individuals from unfair government discrimination and heavy burdens on their religious practices. Under RLUIPA and the Free Exercise Clause of the First Amendment, a plaintiff must show a substantial burden on his sincerely held religious beliefs. *Vinning-El v. Evans*, 657 F.3d 591, 593–94 (7th Cir. 2011) ("Sincere religious beliefs must be accommodated...but non-religious beliefs need not be."); *Williams v. Miller*, 2007 WL 2893641, at *4 (S.D. Ill. Sept. 28, 2007) ("[T]he Free Exercise Clause does not protect requests which are not sincerely held."); *Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008) (RLUIPA is a "guarantor of sincerely held religious beliefs"); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (7th Cir. 2005) (RLUIPA permits "inquiry into the sincerity of a prisoner's profession of religiosity").

Mr. Geesy claims that the Defendants violated the First Amendment and RLUIPA by denying him kosher meals. (Dkt. 13). The undisputed designated evidence shows that the first time Mr. Geesy requested kosher meals was on August 9, 2024, and that the Jail granted his request. (Dkt. 19-8 at 4; Dkt. 19-1 at 15). The undisputed designated evidence also shows that his kosher meals were discontinued on April 18 at his request. *Id.* at 16. Then, in late September, Mr. Geesy asked to resume receiving kosher meals again because he was transitioning to be a Seventh Day

[1] In addition, the Defendants assert that the Court recognized a conditions-of-confinement claim against them in their official capacities and argue that Mr. Geesy cannot prevail on such a claim because he has not shown a violation of his rights cause by a policy, practice, or custom of the Sheriff's Office as required by *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). But the Court did not recognize a *Monell* claim in its screening order. (Dkt. 13). Nonetheless, having failed to respond to the motion for summary judgment, Mr. Geesy has failed to show that a policy, practice, or custom by the Sheriff's Office violated his rights.

Adventist. *Id.* at 18. He did not receive any response to those requests before his transfer to the IDOC on November 4. *Id.* at 20. Thus, the only time period at issue in Mr. Geesy's First Amendment and RLUIPA claims is September 27 to November 4, 2024, during which time he requested kosher meals because he was transitioning to being a Seventh Day Adventist. *Id.* at 18.

Defendants argue that Mr. Geesy cannot establish that his September 2024 request to resume receiving kosher meals was based on a sincere religious belief. (Dkt. 21 at 13–14). They have designated evidence that would allow a reasonable jury to reach that conclusion. Specifically, they have designated evidence—Mr. Geesy's deposition testimony—to show that Mr. Geesy could not explain what Seventh Day Adventists believe or why Seventh Day Adventists have a need for clean and sanitary food prepared in a clean kitchen that is different from any other person's need for clean and sanitary food prepared in a clean kitchen. (Dkt. 19-7 at 12). They have also designated evidence showing that Mr. Geesy's asked for kosher meals because they came in sealed pouches so that he could be assured that no one had tampered with them. *Id.* at 23.

Mr. Geesy did not respond to the summary judgment motion and, thus, did not designate any evidence that would allow a reasonable jury to conclude that his desire for kosher meals in this period was based on a sincerely held religious belief. Thus, the defendants are entitled to summary judgment on his First Amendment and RLUIPA claims. *See West v. Radtke*, 48 F. 4th 836, 843 (7th Cir. 2022) (plaintiff bears initial burden to make prima facie case that prison practice substantially burdened his sincere religious exercise); *Sharp v. Liebel*, No. 3:20-cv-327-JD-MGG, 2021 WL 4147036, at *4 (N.D. Ind. Sept. 13, 2021) ("A claim under the RLUIPA or the First Amendment begins with proof of a sincere religious belief. Once the plaintiff meets his threshold burden of showing a sincere religious belief, he must demonstrate that the state placed a substantial burden on his religious practices.").

Again, because the Defendants are entitled to summary judgment based on the merits of Mr. Geesy's claims, the Court need not address their qualified immunity argument.

## IV. CONCLUSION

For the reasons explained above, the Defendants' Motion for Summary Judgment, Dkt. [18], is **GRANTED**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 8/24/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

ALEXANDER T GEESY
300498
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Rosemary L. Borek
Clark Johnson & Knight, Ltd.
rborek@cjklaw.com

Pamela G. Schneeman
Clark Johnson & Knight, Ltd.
pschneeman@cjklaw.com